## LEE DRILLING CO. et al. v. PRESTON et al.

No. 22509. Opinion Filed Oct. 20, 1931.

Owen & Looney, Paul N. Lindsey, and J. Fred Swanson, for petitioners.

Cooke & Jackson, G. G. McBride, and A. L. Jeffrey, for respondent W. S. Preston.

J. Berry King, Atty. Gen., and Robert D. Crowe, Asst. Atty. Gen., for respondent State Industrial Commission.

KORNEGAY, J. This is an original proceeding brought by the Lee Drilling Company and the United States Fidelity & Guaranty Company, to review the action of the State Industrial Commission of the state of Oklahoma, in making an award in favor of the claimant, W. S. Preston. The order complained of is as follows:

"Before the State Industrial Commission of the State of Oklahoma.

"W. S. Preston, Claimant, v. Lee Drilling Co., Respondent (U. S. F. & G. Co., Insurance Carrier.)

"No. A-56585. Filed May 20, 1931, State Industrial Com.

#### "Order.

"Now, on this 25th day of May, 1931, the State Industrial Commission being regularly in session, this cause comes on to be considered pursuant to a hearing held in Oklahoma City, Okla. before Inspector William Noble, duly assigned to conduct said hearing, on May 8, 1931, on motion of the claimant for a rehearing in the above-styled cause on change of condition, and make further award in said cause; at which hearing the claimant appeared in person and by his attorneys, Cooke & McBride, the respondent being represented by Urey Howard.

"And the Commission after reviewing the testimony taken at said hearing, and all records on file, and being otherwise well and sufficiently advised in the premises, makes the following findings of fact:

"'1. That on the 6th day of October, 1930, the claimant, W. S. Preston, was in the employment of Lee Drilling Company, and engaged in a hazardous occupation subject to and covered by the provisions of the Workmen's Compensation Law, and that, on said date, sustained an accidental injury arising out of and in the course of his employment, consisting of a strained back.

"'2. That the claimant's average daily wage at the time of said accidental injury was $8.

"'3. That by reason of said accidental injury aforementioned, the claimant has been unable to perform his ordinary manual labor from the date of said injury, and still is disabled from performing his ordinary labor.

"'4. That as result of the injury of October 6, 1930, the claimant herein was temporarily totally disabled from his labor from October 7, 1930, to May 24, 1931, or 32 weeks beyond the five-day waiting period, at the rate of $18 per week; that he has been paid compensation to December 19, 1930, in amount of $185, and there now remains due 22 weeks and two days at $18 a week amounting to $402, and continuing award of $18 a week until further ordered by the Commission.

"'The Commission is of the opinion: By reason of the foregoing facts, that said claimant is entitled to compensation for temporary total disability from December 19, 1931, to May 24, 1931, or 22 weeks and 2 days; at the rate of $18 amounts to $402, which is less compensation heretofore paid, and that said compensation should be continued at the rate of $18 per week until further ordered by the Commission.

"It is therefore ordered: That within 15 days from this date, the respondent and insurance carrier herein pay to the claimant the sum of $402 as temporary total disability from December 19, 1930, to May 24, 1931, or a total of 22 weeks and 2 days at the rate of $18 per week, and to continue weekly payments of $18 until further ordered by the Commission.

"It is further ordered: That within 30 days from this date, the respondent or its insurance carrier file with the Commission receipt or other proper report evidencing compliance with the terms of this order.

"Upon the adoption of the foregoing order the roll was called and the following voted aye: Doyle, Chairman, Fannin C."

An inspection of the record shows that the State Industrial Commission received, on October 21, 1930, an employee's first notice of injury and claim for compensation, signed by the claimant, W. S. Preston. In said application is the following:

"Date of accident: October 6, 1930. Cause of accident: Was lifting pipe and strained back. Nature and extent of injury: Back injury. Still under doctor's care. Date quit work on account of injury: October 10, 1930. Date returned to work: Have not returned to work. Are you likely to be disabled more than five days? Yes. Did you suffer loss of a member or loss of use of a member? Yes. If loss of use, is such

loss temporary or permanent? Think same is temporary."

It is stated that the average daily wage was $8, and that the request had been made of the employer to furnish medical attention, and it had done so, and the physician was Dr. S. R. Cunningham. This is signed on the 21st of October, 1930.

On the 4th of November, 1930, the employer's first notice of injury was given. It stated the hour of the day was 8:30 p. m., and the date of the accident was October 6, 1930; that the occupation was that of a derrick man, and he was trying to steady pipe and he strained his back, and the nature and extent of injury was a "strained back," and medical attention was furnished immediately, and that the party had returned to work on the 24th of October. This was filed on the 27th of October, 1930.

On November 4, 1930, there was received by the State Industrial Commission a report of the insurance carrier, stating that compensation was started on the 12th of October, 1930, and the first payment of $33 was made on October 31, 1930, and nature and extent of the injury was "back strained," with a remark, "this is final." The extent of disability was temporary total. The average weekly wage was $8 per day, and the rate of compensation was $18 a week. Total paid was $33. Period of disability was one week and 5 days. The receipt was dated the 31st of October, 1930, and signed by W. S. Preston and the Lee Drilling Company and the United States Fidelity & Guaranty Company, by C. W. Dierolf, adjuster. On November 17th, the payment for temporary total disability was approved by the Commission, and the case closed.

On the 1st of December, 1930, a paper styled "Application for Rehearing" was received by the Industrial Commission, and is as follows:

"Comes now the claimant above named and moves this Honorable Commission to grant him a rehearing herein and for his reasons therefor states:

"That, on or about the 17th day of November, 1930, this Commission made an order approving what is commonly known as Form 7 stipulation agreement, and that said order is now on file in this court. Claimant states that he was induced by fraud of the respondents to sign said stipulation in that he was told emphatically that the only agreement as to his compensation that was affected by said receipt was his $18 per week for temporary total. and that at the time of signing said Form 7, he was suffering from serious back injuries causing severe and excruciating pain and that he did not intend to make any settlement or agreement with reference to any permanent injury that might or might not result therefrom for the reason that it could not have been determined at the time whether or not any permanent injury would result and that if he had known or had been informed that he was signing any agreement with reference to said probable permanent injury he would not have signed said Form 7.

"Claimant further states that at the time he signed said stipulation agreement, he was told by the doctors of this respondent that his injury would be temporary and that he would recover and that he could perform manual labor. That thereafter, and on or about the 3rd of November, 1930, claimant attempted to return to his former employment, and that on account of aforesaid injury and pain, etc., he was unable to continue at his employment and was thereafter, and by reason thereof, again confined to his bed for four days, and that he has reason to believe, and does believe, and therefore alleges the facts to be, that he has suffered a change in condition, in that his back, hips, and sides are much more painful and cause more discomfort in attempting to perform manual labor at this time than at any time since the accident.

"Wherefore, claimant prays that the pretended settlement, approved herein by the Commission on the 17th day of November, 1930, be in all things set aside and held for naught, and that he be given a rehearing, same to be set on the Oklahoma City docket, upon his allegations as above set out and that he have judgment of the Commission.

"(Signed) W. S. Preston, Claimant.
"By Cooke & McBride, His attorneys."

On the 20th of December, 1930, there was received by the Industrial Commission, a stipulation and receipt showing that the employee worked from the 24th of October to the 11th of November, and that compensation began on the 12th of October, 1930, and that $150 had been paid on account of disability, resulting from the injury sustained by the claimant on the above date, and this was signed on the 19th of December, and disapproved by the Commission.

Notice of hearing on the motion of the claimant to reopen cause and award further compensation was given for April 29, 1930. At this time the hearing was had, and both sides had attorneys, Messrs. Cooke & McBride appearing for the claimant, and Mr. Urey Howard appearing for the respondents. On this hearing the claimant testified, and so did some expert pathologists. Of these experts, one favored the cause of the claimant, and one the cause of the respondents. The latter was aided by

an assistant who helped at the examination. The chief experts were evenly matched, so far as diagnosis was concerned, and medical skill. They were not equal, however, in methods of assertion, as one was far more aggressive than the other, and the aggressive one had some help in the way of his assistant, who was a little more liberal in dealing with the claim of the claimant. According to one of these experts, the claimant had received a very serious injury, and one that was likely to be permanent. According to the other expert, the claimant should have been at work long ago, in fact, almost from the time that he first saw him. Reports were made by the pathologists, and according to the pathologist testifying on behalf of the insurance carrier, the injury was temporary, and according to his diagnosis, the claimant was well. X-rays were brought in, and interpretation of the X-ray picture was had by both pathologists, with diametrically opposite conclusions therefrom. In these reports the terms of medical art were used, but the stenographer in transcribing those terms frequently adopted the phonetic spelling, so that the Greek roots were killed, and other derivatives were destroyed, so far as spelling went.

The lawyers took a hand in examining the witnesses, and so did the Industrial Commission. The lawyers showed adaptability in the use of technical medical terms, while the claimant was confined to telling how he got hurt, and what he did in an effort to go to work, and how he felt, and what effect the work had on him. He went back to work, and rode the block up to the "fobble board." He got off there and put a safety belt on, and tried for about 30 minutes, but his back got worse and he had to quit. This was the second time he had tried to work; on the first time he had watched the rig. There was nothing wrong with him before the accident happened. He claimed utter disability to work and to lift anything, and he had done nothing except change some tires since the last effort. His attorneys suggested, however, that he might clean up around a barber shop, or work on a farm at a small wage.

In one of the reports, the history of the accident was given, and showed that the claimant was 75 feet above the ground and was holding a pipe, which was being lowered into the hole, the lower end was free and the pipe swung back against him and twisted his back. At the close of the examination, by the Commission, of the doctor who testified on behalf of the claimant, the attorney for the petitioner asked that claimant be sent to Dr. Climer for examination at the expense of the present petitioner. Later, Dr. Long, on behalf of the insurance carrier, was introduced, and gave his version of the matter, which was strongly in favor of the insurance carrier, and contradicted the interpretation of the other doctor as to the X-rays. His assistant, Dr. McNeill, also testified.

After this examination was completed, the order was made as set out above. We are now asked to reverse and set aside this order, in a brief filed on behalf of the respondents upon two grounds, the first being that the first payment was a settlement and was binding on the Commission, and also the second one was, so far as temporary total disability was concerned. However, it did not occur to the attorneys who were present at the time of the hearing, to so urge. Probably the idea was the result of a later stage in evolution. Instead of insisting upon the doctrine of "res adjudicata," or estoppel by judgment, petitioners urged no disability. With reference to the first stipulation, though application was filed within 30 days thereafter to reopen on account of change in conditions, the insurance carrier recognized that the settlement that had been had was merely for the disability that had occurred up to that time, and proceeded to make another stipulation and settlement, and brought it to the Commission, which was disapproved and hearing had on the merits, resulting in the award complained of.

The provisions of the statute enacted by the Legislature regulating these matters below and here are binding, and are found in the 1923 Session Laws and the Compiled Statutes of 1921. It is provided in section 7296, C. O. S. 1921, that "upon its own motion, or upon the application of any party in interest on the ground of a change in conditions, the Commission may at any time review any award." It further provides that on such review, it "may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in this act." It further provides that the Commission shall state its conclusions of fact and rulings of law and shall immediately send to the parties a copy of the award.

The other section defining the power of the Commission is found in the 1923 Session Laws, ch. 61, sec. 13, and is as follows:

"Section 7325. Amendment of Orders—Constituting Jurisdiction. The power and jurisdiction of the Commission over each case shall be continuing and it may from time to time make such modifications or changes with respect to former findings or orders, relating thereto, if, in its opinion. it may be justified, including the right to re-

quire physical examinations as provided for in section 7293, and subject to the same penalties for refusal: Provided, that upon petition filed by the employer or insurance carrier, and the injured employee, the Commission shall acquire jurisdiction to consider the proposition of whether or not a final settlement may be had between the parties presenting such petition. The Commission is authorized and empowered to have a full hearing on the petition, and to take testimony of physicians and others relating to the permanency or probable permanency of the injury, and to take such other testimony relevant to the subject-matter of such petition as the Commission may require. The Commission shall have authority to consider such petition and to dismiss the same without a hearing if in its judgment the same should not be set for hearing; the expenses of such hearing or investigation, including necessary medical examinations, shall be paid by the employer or insurance carrier and such expenses may be included in the final award. If the Commission decides it is for the best interest of both parties to said petition that a final award be made, a decision shall be rendered accordingly, and the Commission may make an award that shall be final as to the rights of all parties to said petition, and thereafter the Commission shall not have jurisdiction over any claim for the same injury or any results arising from same. If the Commission shall decide the case should not be finally settled at the time of the hearing, the petition shall be dismissed without prejudice to either party, and the Commission shall have the same jurisdiction over the matter as if said petition had not been filed. The same rights of appeal shall exist from the decision rendered under such petition as is provided for appeals in other cases before the Commission, provided there shall be no appeal allowed from an order of the Commission dismissing such petition as provided in this section."

There was undoubtedly a change of conditions shown to the Commission in this case. The change in conditions was recognized by the insurance carrier when it undertook to pay more for further disability. It never occurred to the counsel in the hearings below to suggest that the Commission had no authority to make the award it did make, on account of a former award, the technical term being "res adjudicata." No effort was made to establish such defense, and it comes too late now under the settled rules of this court. even though such a thing could happen, under the settled rules of pleading "res adjudicata."

The effort below was to establish to the satisfaction of the Commission that the claimant had recovered. The Commission found otherwise, however, and its finding on that matter was a question of fact. There was ample evidence to support the award for disability. We are bound by the provision of section 7294, C. O. S. 1921, as amended, and under that section the power of the Commission to approve or disapprove a settlement was plenary, and under that section our power to review its action, on questions of fact, is limited by the following provision:

"The decision of the Commission shall be final as to all questions of fact, and except as provided in section 7297 of this article, as to all questions of law."

Section 7325, C. O. S. 1921, as amended, is, as above quoted, the last expression of legislative will.

Under these sections, undoubtedly the Commission had a right to review the matter and make an investigation and make an award, and we are not authorized to disturb the award, as there was ample evidence to sustain it.

A second proposition is raised that there was no competent evidence to support the award, and that the Commission did not apply the right formula in arriving at an $18 weekly compensation. We do not think it makes much difference in this case as to what formula of calculation is applied. Whether we apply the two-thirds rule with the differential arising from ability to do work. or the rule of temporary total disability, would not change the result, as the admitted facts show beyond any question that the wages of the claimant were $8 a day, and that his wage-earning capacity was practically nothing thereafter, and whether it be $1.50 a day or less, two-thirds of it would be far greater than the maximum allowed under the statute as compensation for disability.

Under section 7297, C. O. S. 1921, permitting a review by this court, we are required to dispose of these proceedings to review in a summary manner. We think that the results arrived at by the Commission in this case are within the letter and spirit of the law, and the award is therefore affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, CULLISON, SWINDALL, and McNEILL, JJ., concur. HEFNER and ANDREWS, JJ., absent.